UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA,**

v.   CASE NO.   3:11-cr-5(S1)-J-20JRK

**ZACHARY ROSE, et. al.**

    **Defendants.**

_____

**DEFENDANT, ELDON DALE BRANDT'S SENTENCING MEMORANDUM**

The Defendant, ELDON DALE BRANDT, by and through his undersigned counsel, and pursuant to Federal Rule of Procedure 47, respectfully submits to this Honorable Court this Sentencing Memorandum, as follows:

**PROCEDURAL BACKGROUND**

Dr. Brandt is a 78 year old male who was charged by Superseding Information with Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 341(a)(1). The to weeks before trial, parties negotiated a plea a to a single instance of distribution as opposed to the conspiracy. The parties agreed to this charge in an attempt to limit the applicability of relevant conduct in the sentencing of Dr. Brandt.  Dr. Brandt entered a plea of Guilty on March 20, 2013, and Adjudicated Guilty on March 22, 2013.

**RELEVANT FACTS ABOUT THE OFFENSE**

Dr. Brandt presents this lengthy factual background, in an attempt to explain the Defendant's position as to relevant conduct. A separate objection to the relevant conduct contemplated in the Presentencing Report has been filed under separate cover and is incorporated by reference herein.

Dr. Brandt, was recruited by Zachary Rose as a primary care physician to work at First Coast Pain and Urgent Care. During the recruitment, Dr. Brandt was continually assured that he was hired to work the "Urgent Care" side of First Coast Pain and Urgent Care.  He began working in late 2010.  Soon thereafter his wife became terminally ill and passed away.  Due to his wife's sickness and death, Dr. Brandt was unable to work full time. Over the period of approximately three months, Dr. Brandt worked a total of 14 days at the subject clinics.  At the end of this brief period.  Dr. Brandt resigned from the clinic and, there after contacted law enforcement over concerns he had with the clinics operations (Attached DEA6 form )

While working at the clinics, Dr. Brandt held two other part time jobs: one as a physician with a weight loss clinic and the other conducting physical examinations for agents of the D.E.A., F.B.I. and A.T.F.  Dr. Brandt maintained his employment with the government until March of 2013, when he voluntarily resigned his license to practice law. The position at Duval Wellness was never a full time job and Dr. Brandt received reasonable compensation ($30 per exam) for only the patients that he saw.  The Government has never sought forfeiture of any of Dr. Brandt's property in relation to his conduct.

As stated above, Dr. Brandt's participation in the day to day operation of the clinic was minimal. There was no evidence that he participated in a plan or organized scheme with any other employees. In fact, other employees of the clinic testified to Dr. Brandt's lack of performance and participation in contrast to others. Specifically, despite the fact that Dr. Brandt resigned, one employee believed that he was fired from the clinic for not seeing patients fast enough and not prescribing enough medication. (See DEA 6 of Jenna Crawley) Another employee, Tasha Harrison, who was terminated for "asking questions," noted in her Grand Jury testimony that: "On April 14th, the day I was let go of my job, I marked down every drug that every—what was in the patient's system. Dr. Brandt stated that he would not see patients with

marijuana in their system. All the {other} Doctors would." (Testimony of Tasha Harrison, pg. 25 ln. 2-7).   Her testimony continued:

> Q.	Okay. And you questioned Dr. Brandt about what I'm sorry?
>
> A.	Why he wouldn't
>
> Q.	Okay and what did he tell you?
>
> A.	 He said he wasn't going to prescribe legal meds to a patient with illegal meds in their system.

(Id. At line 19-25)

As discussed in the Grand Jury testimony of Teresa Faulkner, Jenna Crawley and other employees of the clinic Dr. Brandt was often there for only a few hours seeing only a patient or two on some days. (Jenna Crawley DEA 6) From the "scripture" results filed as evidence during trial, we can tell that Dr. Brandt only prescribed medication on 14 days total. However, only 11 of those days did Dr. Brandt see more than 2 patients. (See U.S. Trial Exhibits 17a,18a,19a)

When Dr. Brandt left the clinic, some employees at the clinic continued to use his license to order prescriptions. Because of this, Dr. Brandt called Jacksonville Sheriff Office (JSO) to report the prescription fraud. (Dr. Brandt DEA-6). Thereafter, Dr. Brandt met with Detective Hall of JSO and an unknown law enforcement officer to discuss the forged prescription order forms. Dr. Brandt handed the forms over to JSO and agreed to cooperate with any investigation. This contact with law enforcement was initiated by Dr. Brandt without any knowledge of a criminal investigation.

Thereafter, Dr. Brandt met with Special Agent Bruce Savell and DI Walters, explaining his involvement and his subsequent departure from the clinic. (Brandt DEA-6 form) Dr. Brandt was candid and forthright with the Federal investigators.

As Dr. Brandt was originally indicted for conspiracy, his case was set for a trial with Theodore Enquist, Jason Votrobek, and Doctor's Perla, Tafflin, and Posca. The trial began

March 25th, 2013. Dr. Brandt litigated the underlying indictment for two and a half years, at the final pretrial conference on March 18th, Dr. Brandt was offered a plea to the superseding information, this was the first and only offer made to Dr. Brandt. Trial, which lasted approximately two weeks, resulted in an acquittal for all the Defendants.

### THE DEFENDANT'S GUIDELINES AND SENTENCE ISSUES

### PRE-SENTENCING REPORT SCORE

Calculating the offense score using the drug dosage of all pain prescriptions written by Dr. Brandt at the clinic, PSR placed the base score at 36.    Defendant has filed an objection, under separate cover, to this score. For reasons noted in that objection, and to avoid a miscarriage of justice, the Defendant request the court consider a base score of 20.

The plea agreement and superseding information were created to limit what could be considered as relevant conduct. Regardless of this intent, the score of 36 represents every pill Dr. Brandt prescribed.   As stated in the Objection, there is no evidence to support a finding that all of the prescriptions, in fact, were illegitimate.   Further, it is notable that, highest drug offense score possible according to the Drug Quanity Table §2D1.1(c) is a level 38, a mere two points higher than that of Dr. Brandt who plead guilty to prescribing one prescription for other than a legitimate purpose. The inequity found in the sentencing table and its application to relevant conduct, thrusts Dr. Brandt in to a category usually reserved for drug kingpins or professional narcotic traffickers.

It should also be noted that Dr. Brandt had a DEA license to prescribe narcotic pain medication and reported all of the subject prescriptions to the DEA as proscribed by law. The clinical presentation of pain in patients is highly subjective and no objective test exists for the detection of pain. Likewise, the medical decision to prescribe pain medication is normally within the discretion of the treating physician.

As to the adjustments applied to the score, Dr. Brandt agrees with the pre-sentencing report in that it applies adjustments for a three point downward adjustment for Acceptance of Responsibility, a two point downward adjustment for Specific Offense Characteristics. Further, as Dr. Brandt agreed to participate as a result of his plea, we anticipate the government to file a 5K1.1 motion for an additional departure. Finally, as discussed below, Defendant agrees with other downward adjustments, but objects to the appropriate level of departure. In support thereof, the Defendant requests the court to consider the following:

### DR. BRANDT PLAYED A MINIMAL ROLE:

The PSR applies a three point downward departure for "minor" role in the offense. While Defendant agrees that the score is subject to a departure on this issue, Dr. Brandt contends his role was "minimal" and he is therefore entitled to a four-point downward adjustment under § 3B1.2 of the United States Sentencing Guidelines. The definition of minimal role as stated in § 3B1.2(a) is, "Minimal Participant.—Subsection (a) applies to a defendant ... who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least

culpable of those involved in the conduct of a group." See *United States v. Dorvil, 784 F. Supp. 849 (S.D. Fla. 1991)*

In the instant case, the United States as well as the office of probation acknowledge Dr. Brandt to be the least culpable of any of physician who worked for Zach Rose. Dr. Brandt worked at the clinics less than any other doctor, as a result, his prescriptions represent less than 2% of the total amount of pills prescribed. (Cite)  After his brief employment, Dr. Brandt resigned from the clinics and contacted law enforcement to voice concerns over what he perceived to be potential criminal wrongdoing. Not only did Dr. Brandt play a brief role at the clinic he voluntarily withdrew and contacted law enforcement. This is minimal involvement.

## PERSONAL CHARACTER, LIFE, AND FAMILY OF DR.BRANDT

Dr. Brandt, was born November 1, 1936.   Raised in the midwest, he later attended North Eastern Missouri State University class of 1960 and Kirksville College of Osteopathic Medicine class of 1964. Dr. Brandt was married to his late wife, Sandra Brandt, for 54 years ending with her passing in 2010.

In his professional career Dr. Brandt, served in in the armed forces for over 30 years, earning the rank of Colonel. Dr. Brandt held professional licenses in several states including Missouri, and Florida for over 25 years. During his tenure as an physician, Dr. Brandt, served on the Board of the Florida Osteopathic Association as President, as well as a managing member of the National Board of Osteopathic Medicine.  Dr. Brandt was named Family Physician of the year in that state of Florida in 1998.

It is notable that from 1936 to 2010, some 74 years, Dr. Brandt never committed a crime or otherwise interacted with law enforcement. This is truly Dr. Brandt's first offense, coming near the end of an otherwise impressive lifetime of service, and reverence to the law.

## MEMORANDUM OF LAW

The Supreme Court ruled that its Sixth Amendment holdings in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applied to the Federal Sentencing Guidelines. Further, a the Court is no longer shackled to the guideline matrix is now considered advisory. *United States v. Booker*, 125 S.Ct. 738,756 (2005). *Gall v. United States*, 128 S.Ct. 586 (2007), and *Kimbrough v.United States*, 128 S.Ct. 558 (2007), In *Gall v. United States*, 552 S.Ct. 38, the Court held that District courts are no longer required to adhere to the structures of the guidelines, nor are courts required to presume that the guidelines provide an appropriate sentence in a given case. In fact, the court is now free "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment." Id. at 53.

Moreover the Court looks to reasonableness as a guideline for sentencing. "If we find a sentence to be procedurally sound, the second step is to review the sentence's substantive reasonableness under the totality of the circumstances" Id. We implore the Court to exercise discretion in sentencing Dr. Brandt as found in *Booker* and its progeny.

## STATUTORY SENTENCING FACTORS

In assessing the totality of the circumstances the Court should contrast the circumstances surrounding the crime against all seven factors outlined is *18 U.S.C. § 3553*, that Congress has identified to be relevant for sentencing:

(1)   The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   The need for the sentence imposed—
   (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) To afford adequate deterrence to criminal conduct;
   (C) To protect the public from further crimes of the defendant; and
   (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   The kinds of sentences available;

(4)   The kinds of sentence and the sentencing range established for—
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(5)   Any pertinent policy statement—

(6)   The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   The need to provide restitution to any victims of the offense

## NATURE AND CHARACTERISTICS OF DR. BRANDT AND THE OFFENSE

Dr. Brandt pled guilty to a single count of dispensing a single medication, unlawfully, one time. Above, the Defendant has outlined what he believes to be the nature of the offense and Dr. Brandt's minimal role. Once again, the prescribing of pain medication is largely a matter of

subjective complaints and professional judgment. Dr. Brandt was originally charged as a member of a vast conspiracy and imputed with the conduct of other professionals to which he no control.

The Defendant has acknowledged that he engaged in criminal conduct and that he realized the criminal nature of the subject clinics. That is not a matter for debate. However, the Defendant hopes that the Court will weigh that criminal conduct with the Defendant's affirmative actions to withdraw from that conduct and notify law enforcement. In weighing this conduct, the Defendant asks for the Court's mercy.

## THE NEED FOR SENTENCE IMPOSED

In determining what sentence to impose, *18 U.S.C. § 3553* directs the Court specifically to deterrence, preventing harm to the public, and the need for health care, correctional treatment and vocational training. In the instant case, Dr. Brandt was a practicing Osteopathic physician who has since retired and turned in his medical license. Dr. Brandt no longer maintains the ability to prescribe any mediation or treat patients. Therefore, Dr. Brandt would be unable to commit the crime, to which he plead guilty to again. Thus, recidivism is not an issue.

Dr. Brandt is 77 years old and his health is failing. In the middle of March, 2014. Dr. Brandt, suffered a broken pelvic bone, he is currently walking with a cane while and under the care of an orthopedic surgeon. The fracture may result in surgical intervention.

Further, Dr. Brandt has recently been diagnosed with prostate cancer. This diagnoses, recent and still developing. The Defendant's blood tests have return PSA's between 6 and 12.

These results are essentially diagnostic for cancer. The defendant has an appointment with his urologist the day after sentencing.

Lastly, Dr. Brandt has had two corneal surgeries and will most likely need an additional surgery in the near future for his failing vision. These health factors are degerative, severe and recent. Dr. Brandt will require consistent, diligent care which is specifically contemplated by *18 U.S.C. § 3553*. We ask the Court to consider this factor in proscribing the appropriate sentence.

## SENTENCES AVAILABLE AND GUIDELINES APPLICATIONS

As the guidelines and sentencing table are now advisory, the Court is not required to impose any specific sentence. Further, the requirements of probation, home detention and split sentences are not advisory. As to how the guidelines apply to the instant case, the Defendant believes they have been misapplied for the reasons stated in the objections to the PSR.

## SIMILARITIES TO OTHER DEFENDANTS

In comparing Dr. Brandt to the other Defendants, counsel prays the Court to consider Dr. Brandt's part-time role in the clinic, his minimal involvement once there, and his whistleblower status. Further, Dr. Brandt is the oldest of all Defendants with serious age-related health problems.

## CONCLUSION

We ask the Court to consider Dr. Brandt as a unique individual in this case. He was involved in the commission of crime and he has plead guilty to that crime. But having made that

mistake, he tried to do the right thing. He resigned from the job and went to police. His actions have ruined an otherwise sterling career, and as a result he has given up his profession. We ask for a sentence that reflects his role and conduct in this matter.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been provided to all counsel of record through the Court's CM/ECF system this 27th day of March, 2014.

**LAW OFFICE OF NOONEY & ROBERTS**

/s/ Kristopher M. Nowicki, Esquire
**Kristopher M. Nowick, Esquire**
Attorney for Plaintiff
Florida Bar No: 089175
1680 Emerson Street
Jacksonville, FL 32207
Tel.: (904) 398-1992
Fax: (904) 858-9943
Knowicki@nooneyandroberts.com

.